IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| Cathy Gaddy, ) | |
| ) | |
|     *Plaintiff*, ) | |
| ) | |
| v. ) | Case No.: 3:13-CV-17-PLR-CCS |
| ) | |
| Radio Systems Corporation, ) | |
| ) | |
|     *Defendant*. ) | |

**Memorandum Opinion and Order**

To care for her ailing husband, Cathy Gaddy had to take extensive amounts of leave from her job at Radio Systems Corporation under the Family Medical Leave Act (the "FMLA"). Mrs. Gaddy also took FMLA leave for herself after having a heart attack in February 2011. From the time she returned to work through August 2011, Mrs. Gaddy was only able to work six hours a day, one day a week. She continued to take Intermittent FMLA leave thereafter. In December 2011, Radio Systems terminated Mrs. Gaddy.

Shortly thereafter, Mrs. Gaddy filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (the "EEOC") alleging she was discriminated against and fired for associating with her disabled husband. She also alleged she was fired in retaliation for taking FMLA leave. The EEOC issued a right to sue letter, and Mrs. Gaddy filed the present suit alleging substantially the same claims as contained in the Charge of Discrimination. Subsequently, however, Mrs. Gaddy amended her complaint to add additional

claims for discrimination on account of her own disabilities in violation of the Americans with Disabilities Act (the "ADA").

Presently before the Court is Radio Systems' motion for partial summary judgment. [R. 31]. Radio Systems seeks summary judgment on Mrs. Gaddy's claims for back pay and front pay; it also seeks dismissal of Mrs. Gaddy's claims of discrimination on account of her own disabilities that were added in her Second Amended and Restated Complaint. For the reasons that follow, Radio Systems' motion will be granted in part and denied in part.

**1. Standard of Review**

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Co., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Keifer,* 301 F.3d 937, 942 (6th Cir. 2002). Courts may not resolve genuine disputes of fact in favor of the movant. *Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014) (vacating lower court's grant of summary judgment for "fail[ing to] adhere to the axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor") (internal quotations and citations omitted).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the

nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id*.

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Id*. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id*. at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**2. Background**

Cathy Gaddy began working for Radio Systems Corporation in November 2007 as a customer care specialist. Beginning in November 2008, Mrs. Gaddy went on Intermittent FMLA leave to care for her husband who had numerous medical problems, including blindness, diabetes, kidney failure, heart disease, and an amputated leg. Mrs. Gaddy's Intermittent FMLA leave was renewed regularly, and "would be necessary, basically, for the rest of her husband's life." [R. 35, p. 2]. Mrs. Gaddy also had health problems of her own. She had a heart attack in February 2011, which led to her taking continuous FMLA leave from February 22, 2011 through March 21, 2011. Upon returning to work, Mrs. Gaddy worked on a reduced schedule—as little

as six hours per day, one day per week until August 2011. [R. 17, p. 3]. After August 2011, it appears Mrs. Gaddy resumed a normal working schedule, only taking Intermittent FMLA leave.

In October 2011, while still employed by Radio Systems, Mrs. Gaddy applied for Social Security disability benefits. In her application, Mrs. Gaddy indicated she became unable to work on February 22, 2011 (the date of her heart attack) because of a disabling condition, and she continued to be disabled through the present time. [R. 32-1, p. 11]. The Social Security Administration denied Mrs. Gaddy's application.

Radio Systems terminated Mrs. Gaddy in December 2011. According to Mrs. Gaddy and her doctor, the termination exacerbated Mrs. Gaddy's preexisting anxiety and depression to the point that Mrs. Gaddy was unable to work. [R. 35, p. 3]. Mrs. Gaddy's termination was not, however, the only factor contributing to her anxiety and depression. According to Mrs. Gaddy's doctor, numerous factors contributed to her depression and anxiety, including the declining health and death of her husband, the stress and guilt associated with being her husband's caregiver, numerous health problems of her own, and financial concerns.

In February 2012, Mrs. Gaddy filed new paperwork with the Social Security Administration, representing that her hands "hurt so bad from arthritis [she] can't type or hold a grip in [her] pens." She also stated "I stay very tired that I have gone to sleep while on the phone. I'm very depressed I cry for no reasons. My mind wanders." [R. 32-2, p. 1]. The Social Security Administration granted Mrs. Gaddy's application for disability benefits in May 2012, finding that the onset of her disability dated back to February 22, 2011. Mrs. Gaddy was paid disability benefits retroactively to August 2011, and will continue to receive disability benefits for the rest of her life.

4

In March 2012, Mrs. Gaddy filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (the "EEOC") alleging she "was discriminated against due to [her] association with [her] disabled husband and retaliated against for having to take FMLA." [R. 17-1, p. 1].

At Mrs. Gaddy's request, the EEOC issued a right to sue letter on October 11, 2012. [R. 17-2]. She filed her original complaint on January 10, 2013 alleging discrimination "due to her relationship or association with a disabled person." [R. 1, ¶ 76]. Mrs. Gaddy also alleged she was fired in retaliation for exercising her rights to FMLA. [*Id.*, ¶ 72]. Mrs. Gaddy's original complaint did not contain allegations of discrimination due to Mrs. Gaddy being disabled, being regarded as disabled, or because Mrs. Gaddy requested reasonable accommodations on account of her disability. It was not until Mrs. Gaddy filed her Second Amended and Restated Complaint in November 2013 that she specifically included such charges. [R. 17].

Radio Systems filed a motion for partial summary judgment on June 26, 2014. [R. 31]. In its motion, Radio Systems seeks summary judgment on Mrs. Gaddy's claims for back pay and front pay as well as summary judgment on Mrs. Gaddy's claim that she was discriminated against because she had a disability, was regarded as having a disability, or because she requested reasonable accommodations.

### 3. Discussion

#### A. Back Pay and Front Pay

Radio System argues that Mrs. Gaddy is not entitled to back pay or front pay because she has been unavailable to work since the date of her termination. To place the plaintiff in the position she would have occupied had the discrimination not taken place, a successful plaintiff in an employment discrimination case is generally entitled to an award of back pay from the date of

5

discharge through the date of judgment. *See, e.g., Thom v. American Atandard, Inc.*, 2009 WL 961182, at * 2 (N.D. Ohio April 8, 2009) (citing *Shore v. Fed. Exp. Corp.*, 777 F.2d 1155, 1158 (6th Cir. 1985)). However, back pay and front pay are not available during periods for which the plaintiff is unavailable to work. *Latham v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 794 (11th Cir. 1999) ("[C]ourts exclude periods where a plaintiff is unavailable to work, such as periods of disability, from the back pay award.").

Mrs. Gaddy has testified that her depression rendered her unavailable to work since the date of her termination; however, Mrs. Gaddy notes that a plaintiff who is unavailable to work is nonetheless entitled to back pay when the defendant caused the plaintiff's disability that prevents her from working. *See, e.g., Johnson v. Spencer Press of Maine, Inc.*, 364 F.3d 368, 383-84 (1st Cir. 2004) ("Johnson is correct that several courts have held that an employee who is unable to work due to a disability is not precluded from receiving back pay when the employer 'caused' the disability."); *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 157 (3d Cir. 2003) ("Because [the employer's] conduct affirmatively impaired [the employee's] ability to mitigate her damages, it would be inequitable to reduce her back pay award in this case."). This rule is the logical corollary to the principal that victims should be restored "so far as possible" to a position they would have held absent the unlawful discrimination. *Johnson v. Spencer Press*, 364 F.3d at 384 (citing *Albermale Paper Company v. Halifax Local No. 425*, 422 U.S. 405, 421 (1975)).

Mrs. Gaddy states that she "went into a very deep depression" following her termination that she has not come out of yet. Indeed, Mrs. Gaddy's physician, Dr. Crystal L. Gue, testified that Mrs. Gaddy's depression and anxiety worsened shortly after her termination. But Dr. Gue also testified that she had been treating Mrs. Gaddy for anxiety and depression for years prior Mrs. Gaddy losing her job, and Dr. Gue identified a number of significant factors in addition to

6

losing her job that contributed to Mrs. Gaddy's depression and anxiety issues, including her husband's deteriorating health and subsequent death, guilt associated with being her husband's caregiver, her own serious health issues,[1] the illness of her son, and financial concerns. Dr. Gue's testimony also stated that rather than falling into a sudden and deep depression immediately following her termination, Mrs. Gaddy's depression and anxiety "seemed to get gradually get worse over the next couple of years." [R. 34-2, p. 19].

The facts of the instant case are analogous to *Johnson v. Spencer Press*., 364 F.3d 368. In *Johnson*, the plaintiff quit his job after being harassed by his supervisor at Spencer Press. He got another job shortly thereafter at a different company, but was eventually fired from that job. After being fired, Mr. Johnson never sought additional employment to mitigate his damages because he suffered from a total psychological disability. 364 F.3d at 383. Mr. Johnson argued that his disability was caused by the harassment he endured at Spencer Press, and he offered the following expert testimony in support of his position:

> [Johnson] had been able to maintain a certain degree of functioning and employment until the events which took place during his employment at Spencer Press, including the harassment he stated he received while he worked there. I am aware that Mr. Johnson had other issues in his life, including family deaths, divorce, and problems with his sons, and I did not make a determination as to what event or events, if any, caused his depression and panic and anxiety disorders. Nevertheless, it is clear to me that the events at Spencer Press relating to the harassment he stated he received from his supervisor exacerbated his depression and panic and anxiety disorders.

*Id.* at 384.

After endorsing the rule that an employee is not precluded from receiving back pay when the employer caused the disability, the First Circuit explained that, although the expert's

---
[1] In addition to her heart attack, anxiety, and depression, Mrs. Gaddy suffered from osteoarthritis with chronic pain and high cholesterol. [R. 34-2, p. 10].

7

Case 3:13-cv-00017-PLR-CCS   Document 69   Filed 10/02/14   Page 7 of 12   PageID #: 1030

testimony indicated there may have been *some* relationship between the harassment at Spencer Press and Mr. Johnson's disability, "it was not sufficient for Johnson to escape summary judgment on the issue." *Id.* The court based its conclusion on the fact Mr. Johnson "had numerous other significant problems in his life that may have been causally related to his disability," and that Mr. Johnson had suffered from depression and anxiety for years prior to being harassed at Spencer Press. *Id.* The court further noted that Mr. Johnson was able to obtain employment for a period of time after leaving Spencer Press.

In the present case, Mrs. Gaddy's evidence indicating that her preexisting depression and anxiety grew worse after she was terminated is insufficient to overcome summary judgment. As in *Johnson*, Mrs. Gaddy suffered from depression and anxiety for years prior to her employer's alleged unlawful activity. Mrs. Gaddy also had numerous independent sources of stress contributing to her depression and anxiety. While Mrs. Gaddy did not obtain work for a period of time after leaving Radio Systems, as Mr. Johnson did, the evidence is nonetheless insufficient to establish a genuine question of law regarding whether Radio Systems caused her depression.

Because Mrs. Gaddy has been continuously unavailable to work since her termination from Radio Systems, and because the record, even taken in the light most favorable to Mrs. Gaddy, is insufficient to support a finding that Radio Systems caused Mrs. Gaddy's depression, Radio System's motion for summary judgment with respect to back pay and front pay will be granted.[2]

---

[2] Mrs. Gaddy did not make the allegation that Radio Systems caused her disability in her original complaint, her amended and restated complaint, or her second amended and restated complaint—instead, she first raised it in her response in opposition of Radio Systems' motion for summary judgment. Radio Systems urges the Court to strike the allegation as time-barred, however, in light of the Court's disposition of that claim, its timeliness need not be addressed.

8

### B. Americans with Disabilities Act Discrimination Claims

Radio Systems contends it is entitled to summary judgment on the ADA discrimination claims Mrs. Gaddy added in her second amended and restated complaint because Mrs. Gaddy did not exhaust her administrative remedies with respect to those claims. Prior to filing a lawsuit alleging discrimination due to a disability, a plaintiff must first file a Charge of Discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(e); 29 C.F.R. § 1601.13. If the EEOC does not find enough proof to file a discrimination suit or if more than 180 days have passed since filing the EEOC Charge, the claimant may request that the EEOC issue a right to sue letter. 29 C.F.R. § 1601.19(a); 29 C.F.R. § 1601.28(a).

Mrs. Gaddy filed a Charge of Discrimination with the EEOC on March 9, 2012 alleging the following:

> I was discriminated against due to my association with my disabled husband and retaliated against for having to take FMLA. . . . I was terminated on December 14, 2011 allegedly for violation of policy, but I was never made aware of this "policy" previously, and it was not the real reason for my termination. The real reason for my termination is because my employer regarded my disabled husband as a distraction to me at work, and they were upset with the fact that I had to utilize FMLA leave to assist or take care of my disabled husband and when I missed work due to a serious health condition.
>
> During my employment and leading up to my termination, managerial employees expressed their belief that I was distracted due to having to care for my disabled husband and they were tired of me missing work due to FMLA leave.

[R. 17-1]. At Mrs. Gaddy's request, the EEOC issued a right to sue letter on October 11, 2012. [R. 17-2]. She was required to bring her lawsuit pursuant to that notice within the statutory 90-day period, which she did. Mrs. Gaddy's original complaint as well as her amended and restated complaint only alleged that she was discharged "due to her relationship or association with a

9

disabled person" or in retaliation for her taking FMLA leave to care for her husband and due to her heart attack. [R. 1, p. 9].

Radio Systems contends the allegations Mrs. Gaddy added in her second amended and restated complaint, [R. 17], were not included in her EEOC Charge and should therefore be dismissed. In response, Mrs. Gaddy argues that the allegations of discrimination based on her own disability, being regarded as disabled, and being retaliated against for requesting a reasonable accommodation "were all within the scope of the investigation that would reasonably be expected to grow out of the Charge of Discrimination [Mrs. Gaddy] filed with the EEOC." [R. 35, p. 19].

The Sixth Circuit has explained that the requirement that plaintiffs first exhaust their administrative remedies "is not meant to be overly rigid, nor should it 'result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading.'" *Randolph v. Ohio Department of Youth Services*, 453 F.3d 724, 732 (6th Cir. 2006) (quoting *EEOC v. McCall Printing Co.*, 633 F.2d 1232, 1235 (6th Cir. 1980)). Accordingly, "EEOC complaints should be liberally construed to encompass all claims 'reasonably expected to grow out of the charge of discrimination.'" *Id.* (quoting *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992)).

Applying a liberal construction to Mrs. Gaddy's EEOC Charge, the statement that "[t]he real reason for my termination is because . . . they were upset . . . when I missed work due to a serious health condition" can plausibly be construed as an allegation that she was terminated on account of her disability. A reasonable EEOC investigator, upon reading the charge, would enquire as to the nature of Mrs. Gaddy's "serious health condition" and what accommodations, if

any, Radio Systems was asked to make on account of it. Accordingly, Mrs. Gaddy exhausted her administrative remedies with respect to these claims.

Radio Systems argues that, even if Mrs. Gaddy did exhaust her administrative remedies, she failed to bring the ADA claims relating to her disability within 90 days of receiving the EEOC's right to sue letter. Mrs. Gaddy's amendment to her complaint adding these claims occurred well after the 90 day period, however, they relate back to her original filing date under Rule 15(c) of the Federal Rules of Civil Procedure, which provides that amendments to a pleading "relate[] back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

The ADA claims relating to Mrs. Gaddy's disability arose out of the same conduct or occurrence set out in her original pleading—namely, her allegedly wrongful termination. Moreover, Radio Systems did not oppose, or even respond to, Mrs. Gaddy's motion to amend her complaint and her request that the amendment relate back to the date of the original pleading. [R. 16, p. 2]. Mrs. Gaddy's motion to amend included a copy of her proposed amended complaint that included the new claims. Radio Systems waived any opposition to Mrs. Gaddy's claims relating back when it did not timely respond in opposition. Local Rule 7.2.

Because, under a liberal construction, a claim for discrimination based on Mrs. Gaddy's disability or a claim for retaliation relating to a request for reasonable accommodations can reasonably be expected to grow from Mrs. Gaddy's EEOC Charge, and because Mrs. Gaddy's amended complaint relates back to the date of her original complaint, Radio Systems' motion for summary judgment on this issue will be denied.

**4. Conclusion**

11

For these reasons, Radio Systems' motion for partial summary judgment, [R. 31], is **Granted in Part** and **Denied in Part**. The motion is granted with respect to Mrs. Gaddy's claims for back pay and front pay. Those claims are **Dismissed**. Radio Systems' motion is **Denied** with respect to Mrs. Gaddy's allegations concerning discrimination based on her own disability, the perception that she had a disability, or retaliation for seeking reasonable accommodations.

**It is so ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**